[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action instituted by the plaintiff wife, Janice DellaCamera against the defendant husband, Raymond DellaCamera seeking a dissolution of their marriage. The parties have resided in the State of Connecticut for more than one year prior to the bringing of this action and the court has jurisdiction over the marriage and the parties. Neither party has been a recipient of public assistance during the period of the marriage. The parties were married on November 21, 1964. They have two children, Todd, CT Page 10762 who is 32 years old, and Susan, who is 30 years old. The parties' marriage has broken down irretrievably. There is no reasonable hope of reconciliation, and the court orders a dissolution of the marriage.
The court has carefully considered the statutory criteria for the granting of a I dissolution of marriage, the awarding of alimony and attorney's fees, and the dividing of the parties' assets and liabilities. The court makes the following findings and orders.
The wife is 53 years old and in good health. In 1985 she received a bachelor of science degree in accounting. The husband is 56 years old and his health is not good. In 1990, he underwent surgery for prostate cancer and the cancer is currently in remission. He has carpel tunnel syndrome in both hands for which he is receiving a disability pension from the New Haven Police Department. He retired from the New Haven Police Department in February 1998. In or about March 1998, after he started receiving this pension, he became employed as a police officer with Southern Connecticut State University. In February 1999, he underwent surgery for a spinal fusion of the cervical spine and he missed weeks from work recovering from this operation. At the end of the trial proceedings, he was scheduled to return to work in June 1999, but it was unclear whether his medical condition would allow him to do so.
The parties do not dispute many of the facts concerning the history of their marriage. About six months prior to their marriage in November 1964, the husband became a New Haven police officer. The parties' marital residence on Belvedere Road, North Haven, Connecticut was purchased by them in 1967. After the children were born, the plaintiff stopped working outside of the home and remained at home until 1976 when the youngest child started first grade.
Between 1964 and 1978, the parties began to have marital difficulties and began to grow apart. The wife claims that her husband became abusive and excessively demanding. He began to remain away from home often, working and socializing. After the children were born, he did not regularly participate with their care and upbringing. On the other hand, the husband claims that his wife was snobbish, lazy and controlling. In any event, in 1978 the wife learned and confirmed that the husband had an affair with another woman. This woman claimed that the husband CT Page 10763 was the father of her infant child. The wife claims that the husband hit her and knocked her down when she confronted him with this information. The husband denies this accusation. Paternity was never definitively established, but the husband admitted to the affair. Primarily as a result of this incident, the husband left the marital residence. In 1979, he ultimately began to reside with a Miss Ann Massaro. In 1982, approximately four years later, the husband returned home in an attempt to reconcile with his wife. In a matter of months, these reconciliation efforts failed and the husband returned to live with Miss Massaro. He has continued to live with Miss Massaro since that time. Miss Massaro has worn an "engagement" ring for at least the past three years, and she and the husband have referred to her as the husband's fiancee. Although the wife contributed to the breakdown of the marriage, the evidence clearly establishes that the husband's conduct caused the irretrievable breakdown of the parties' marriage.
Thus as indicated above, except for a brief period in 1982, these parties have lived apart and have lead separate lives since 1978 or for about 21 years. The husband stated that at least for some period of time, he chose not to file for divorce because he wanted to leave open the possibility of reconciliation. The court discounts this explanation, noting the length of the separation and his very close relationship with Miss Massaro. The parties attempted reconciliation 17 years ago. This effort only lasted a matter of months, failed miserably, and ended with the husband resuming his residence with Miss Massaro. The wife claims that she did not file for divorce sooner because she was intimidated by the husband's threat that she would lose the house if she did. The court finds no credibility to the wife's claim and finds the husband's other testimony more credible — the parties became comfortable with their arrangement and voluntarily chose to live apart without a formal divorce. During their separation, the husband provided financial support to the family, including support for the children's education, but often not in the amounts or on as regular a basis as desired by the wife. This support continued on a fairly regular basis at least through 1987. Also, as — indicated above, the wife attended college full time during this time period graduating in 1985.
The wife presently works as an accountant with the State of Connecticut Department of Revenue Services. According to her financial statement, she earns $1,150 a week gross and $616 a week net from this employment. She also has dividend and interest CT Page 10764 income from investments of approximately $15 a week. She estimates her total net weekly income to be about $627. However, it should be noted that her calculation of her net earnings reflects her voluntary contribution of $125 a week into her credit union savings account. Without this deduction, her net income would be $752 a week.
According to the wife's financial affidavit, she also has personal weekly expenses of about $750 a week, but the court finds that at least $100 of these expenses are either excessive or purely discretionary expenditures. her financial affidavit also indicates that she owns the following: a 1995 Honda Accord having an equity value of $10,000; bank accounts having about $1,500 in cash; stocks and bonds having an approximate value of $73,000; a 1/3 ownership interest in real estate in Branford, Connecticut valued at $33,000; and other personal property having an approximate value of $3,000. She has an Aetna annuity and a State of Connecticut pension. The Aetna annuity is valued at approximately $126,806. The plaintiff offered expert testimony that her pension with the State of Connecticut has a value of $97,270. She lists liabilities on her financial affidavit totaling $4,887, which includes a $1,387 debt owed for attorney fees related to this action.
The parties jointly own the wife's present residence on Belvedere Road in North Haven Connecticut. According to their post-trial memoranda, the parties agree that this property has an equity value of approximately $128,000. This property is not mortgaged.
As stated above, the husband works as a police officer for the Southern Connecticut State University. According to his financial affidavit, he earns $807 gross and $510 net a week from this employment. He earns about $898 gross and about $746 net a week from his City of New Haven pension which is in pay status. He also receives rental income from real estate that he owns and interest income from investments. His total net weekly income from all these sources is about $1,293 a week. According to his financial affidavit, the husband has personal, weekly living expenses of about $600, but the evidence establishes that these expenses are shared between the husband and his companion, Miss Massaro. The court finds that Miss Massaro at least contributes between $200 and $250 per week for these expenses, and therefore, the actual personal expenses that the husband assumes responsibility for roughly range between $400 and $350 a week. CT Page 10765 The husband gambles extensively. He testified that over the last year, he has had average gambling losses of approximately $3,000 a month.
The husband opened two accounts each containing $10,000 which he claims are controlled by and are for the benefit of his children. Additionally, he testified that he recently created a trust for his granddaughter for $2,500 which does not appear on his financial affidavit. The husband's financial affidavit also indicates that he owns the following: a 1988 Honda Accord valued at $4,000; bank accounts having $79,000 in cash; insurance policies having $14,011 in cash value; a First Union IRA valued at $24,700; and other personal property and firearms valued at $8,000. The evidence indicates that the husband has a worker's compensation claim and a personal injury claim. The claims are unliquidated and the court received no evidence about their merit or worth. The evidence also indicates that the husband is presently contributing to a pension as part of his present employment with the Southern Connecticut State University. The court received no evidence about the value of husband's pension with his present employer.
The court heard extensive testimony about the husband's City of New Haven pension. The husband contributed to this pension in lieu of Social Security while he worked as a police officer with the city. This pension is in pay status and its disposition is a hotly contested issue between the parties. Both parties agree that based on existing Supreme Court precedent, the pension should be treated as property subject to division by the court as a marital asset. See Krafick v. Krafick, 234 Conn. 783 (1995).
The specific holding in Krafick is that a trial court errs when it fails to consider any valuation for a vested pension in a manner that effectively removes the pension from being considered as part of the property division. Although the Court did not explicitly address how a pension in pay status should be valued for purposes of distribution, the Supreme Court in Krafick discussed the issue of valuation and distribution in regard to a pension that had vested, but had not yet matured. Id. at 799-804. The Supreme Court discussed three approaches often used to value and distribute pension benefits: the "present value" or "offset method"; the "present division" method; and the "reserved jurisdiction" method. The Court explained that "[t]hese methods are not exclusive. A trial court retains discretion to select any other method to take account of the value of a pension asset that CT Page 10766 might better address the needs and interests of the parties." Id. at 804. The Court also' stated that although the trial court should ordinarily determine on the record the value of the pension (Id. 804), the evidence may not always permit a specific finding of value. Id. at 802 (certain valuation methods may not be possible "where no present value can be established [by expert testimony] and the parties are unable to reach agreement").
The wife offered the testimony of an expert, a Mr. Brandt, to establish the fair market value of the husband's City of New Haven pension. He testified that in his opinion, the pension has a present fair market value of $743,664. The court finds that Mr. Brandt's testimony provides some general guidance to facilitate an approximate estimate of the value of this pension, but that his testimony lacks sufficient credibility for the court to find that the pension has a present value of $743,664. The primary problem is that the husband's pension has a cost of living adjustment providing for a 4% increase of the benefit every other year, not to exceed a maximum increase of 25%. For his calculation, Mr. Brandt assumed a 2.1% cost of living increase every year for 15 years, without adequately explaining why this cost of living formula, which differs from the formula under the plan, would provide a fair basis for calculating the pension's present fair market value. In short, the court is satisfied that the evidence establishes that the husband's pension has a substantial value and that this value is much higher than the value of the wife's pension, but the court is not satisfied that the testimony of plaintiffs expert was sufficiently credible and reliable to conclude that the pension has a present value of $743,664 as she maintains. The husband does not contest the wife's claim that her pension has a present value of $97,268 and the court concludes that the husband's City of New Haven pension has a present value that is at least between four to six times higher than the wife's pension.
Additionally, however, the court must emphasize that the pension's estimated, present market value is only one important factor to consider when evaluating a division of the marital assets. A pension in pay status must be viewed as a unique form of income producing property because its specific purpose is to provide a stream of income when the employee retires. This income stream has special significance because the specific purpose and design of the pension contemplate that the income will be received when the recipient's earnings and earning capacity have become limited or diminished. Consequently, in determining the CT Page 10767 disposition of a pension in pay status, the court must consider the pension's market value and income stream, as well as the parties' overall circumstances, their financial needs, and the other criteria of Section 46b-81 of the General Statutes.
The wife insists that the court should place primary emphasis on the present value of the pension, and because this value is so high, she further insists that she should receive at least one-third of this asset in order to achieve an equitable property distribution. More specifically, the wife's position is that the parties' property should be split equally, and based on her property value estimates and other proposed orders, an order transferring one-third of this pension and the parties' marital home to her would approximately achieve this result. On the other hand, the husband emphasizes the length of the parties' separation and the wife's limited contribution to the accumulation of the pension benefits to argue that a transfer of the marital residence to her and a transfer of the City of New Haven pension to him represents a fairer and more equitable disposition. See generally, Papageorge v. Papageorge,12 Conn. App. 596 (1987). As reflected by the court's final orders issued I below, the court does not agree with all aspects of the husband's proposed orders. However, the court finds much of the husband's argument concerning the City of New Haven pension more persuasive than the wife's position.
First, the wife's position places insufficient emphasis on the fact that the parties have been separated for approximately 20 years. Although the parties were married in 1964, this is not a case where the parties were married for 35 years and separated when divorce proceedings were instituted. The irretrievable breakdown of the parties' marriage occurred many years ago and the parties have been maintaining separate lives and finances for decades. Second, the most significant value of the pension accumulated while the parties were separated, especially considering the increased salary and overtime the husband received during the latter part of his employment with the city. Third, the wife is in good health and is younger than the husband. The husband is not in good health and the court is satisfied that his health and age have adversely impacted and will continue to adversely impact his ability to maintain a livelihood as a police officer. The wife, as compared to her husband, has better prospects to continue work, increase her present earnings and contribute further to her retirement funds than the husband. The court also notes that an award of the CT Page 10768 pension benefits to the wife would be non-modifiable and therefore could not be adjusted to provide more income to the husband if his health deteriorates further and the pension becomes his only significant income source.
After a review of these considerations and the statutory criteria of Sections 46b-8 1 and 46b-82, the court concludes that a fair and equitable disposition of these disputed matters can be achieved through a lump sum alimony award and other divisions as reflected in the orders issued below.
 ORDERS
1. Dissolution of marriage. The parties marriage is hereby dissolved.
2. Property divisions. The husband shall transfer his interest in the family home located on Belvedere Road, North Haven, Connecticut to the wife and she shall exclusively own this property free and clear of any interests of the husband. The parties shall retain respectively all remaining real and personal property, monetary claims, stock, bank and credit union accounts, and deferred compensation accounts listed on their financial affidavits or in their possession to the exclusion of the other, except the husband shall transfer the funds necessary to satisfy the alimony award as ordered herein.
3. Alimony. The wife shall receive lump sum alimony from the husband in the amount of $50,000, payable as follows: 1) $30,000 payable within 30 days of this order; and 2) $20,000 payable at the rate of $150 a week.
4. Debt divisions. Each party shall be responsible for the liabilities listed on their financial affidavits or owed by them respectively and they shall indemnify and hold the other harmless thereon.
5. Counsel fees. Each party shall be responsible for the payment of his or her own counsel fees.
So ordered August 4, 1999.
Stevens, Justice CT Page 10769